Complainants' bill seeks to restrain the erection, maintenance and use of a private garage structure attached to the dwelling house on defendant's lot — as being in contravention of restrictive covenants contained in defendant's deed and in the deeds of all other owners of lots in that particular neighborhood development.
The covenants in question run with the land; they were created in 1920 and are effective until January 1st, 1935. They provide that the owner —
"Shall not * * * erect * * * upon the * * * premises or any part thereof, any building to be used or *Page 455 
occupied for any other purpose than as a private residence or dwelling house, and any private residence or dwelling house erected upon said land shall cost not less than $2,500, but * * * necessary and suitable garages and out-buildings may be erected on the rear of the lot * * * at such cost as the" (owner of the lot) "may choose; no building or part thereof except verandas, steps and bay windows, shall * * * be erected on any part of said premises within ten feet of the front line thereof."
Defendant has erected a one-story addition on the side of her house, for use by the occupants of the house as a private, single-car garage. The roof of this addition is designed and used as an upstairs sun porch, with access from a doorway or French window constructed in the wall of the main house for that purpose; the interior of the addition is heated from the main house through windows, one of which is to be enlarged into a doorway to be used for access directly into it from the adjoining room in the house as originally constructed. (The new structure is not completely finished — completion having been halted by the present litigation.) The outside walls are stuccoed similarly to the walls of the original house (except that the stuccoing on one wall has not been as yet completed).
The addition therefore not only appears to be, but in fact is, a part of the dwelling house. It is not a mere abutting out-building as was the case in Rothholz v. Stern, 97 N.J. Eq. 189; 127 Atl. Rep. 97, and in Bruce v. McClees, 110 N.J. Eq. 92; 158 Atl. Rep. 849, and hence does not come within the proscription of the covenants against another building — a building other than the dwelling house building — erected elsewhere than one the rear of the lot. Except for the question arising from its purpose and use as a garage, it is not open to objection under the covenants; so far as the covenants are concerned it does not differ materially (apart from its use) from a somewhat similar one-story ell on the side of complainants' dwelling house, apparently used as a sun parlor or entrance hall. Indeed this new addition could, at very little cost or trouble, be altered so as to be used as a *Page 456 
living room, study, playroom or other downstairs room of defendant's house, and in such case clearly could not be objected to.
It is the garage use which is the real ground of objection on the part of the complainant husband (who is the real objector). It is his belief and contention that the language and intent of the covenants prohibits the use of even an integral part of the dwelling house for private garage purposes.
If the covenants stopped at the end of the first restriction the determination of this question might be somewhat more difficult — although, as is mentioned by the court of errors and appeals in Trainer v. Calef, 96 N.J. Eq. 657;126 Atl. Rep. 301, there are decisions in other states holding that the use of a part of the house for the housing of the occupant's automobile does not violate a covenant which limits the use of the house to the purposes of a residence or dwelling. There is an additional clause of exception, however, and the language thereof (as well as that of all of the clauses of the covenant) must be considered.
Paraphrasing the particular covenant in question, without in anywise altering its meaning — and disregarding for the moment the other covenants — we have the following provision:
"No building shall be erected upon the premises other than a building to be used and occupied exclusively as a private residence or dwelling house; except that necessary and suitable private garages and out-buildings may be erected on the rear of the lot."
Consideration of this provision shows that it is susceptible of being interpreted in at least two different ways. It may be intended (as complainant argues it is), to express the purpose,inter alia, that there should be no housing of an automobile on any part of the premises except on the rear of the lot — irrespective of whether the garage be a separate building or an integral part of the dwelling house.
On the other hand it is quite possible that the grantor did not have that intent. Obviously, his general design was to develop the tract as a residence tract, and he had in mind that he wanted no construction or use of any building, whether *Page 457 
main or subordinate, for commercial purposes or purposes not coming generally within the category of residential purposes; he wanted nothing but a general residence building (which might or might not include a room for housing a private car), on the front of the lot — other separate buildings might be built if intended for proper auxiliary residential purposes ("necessary and suitable") — but must be kept at the rear of the lot. The language of the covenant is perfectly susceptible of the interpretation that it was intended to accomplish the foregoing purposes and nothing more; that it was intended to keep a garage strictly to the rear of the lot only in case it was a separate building; that the intent was, not that automobile housing
should be restricted to the rear of the lot, but that separatebuildings should be restricted to the rear of the lot.
Indeed when the other parts of the covenant provision are considered, it seems that this interpretation is the more natural and probable. The dwelling house must cost at least $2,500 — a pretty low restriction especially at that time of post-war high prices; but it is expressly provided that no minimum price whatever is fixed for a separate garage or other out-building at the rear of the lot. The kind of garage or out-building which would be put up by the owner of a $2,500 house would be apt to be a corrugated iron shed or other structure built with no other controlling consideration than utility and cheapness — and which would therefore detract from the general appearance of the premises if prominently located. Hence it would be natural that the grantor would wish to keep such structures at the back of the lot; it is not so readily presumable that he would object to a dwelling house containing in itself housing room for a private car.
In any event, there being doubt as to which is the meaning intended to be expressed by the restrictive covenant, that doubt must be determined against the complainant, and that interpretation must be adopted which is most favorable to the owner of the lands. Trainer v. Calef, supra. "Equity will not aid one man to restrict another in the uses to which *Page 458 
he may lawfully put his property unless the right to such aid is clear," and "every doubt and ambiguity in the language of a restricting covenant must be resolved in favor of the owner's right." Marsh v. Marsh, 90 N.J. Eq. 244; 106 Atl. Rep. 810.
These considerations lead to a dismissal of the complainants' bill.
It may also be noted that in the present case there was neither proof nor intimation of any damage to complainant or anyone else by the erection of this addition, nor that there was even the slightest dissatisfaction against it on the part of anyone other than complainant; and complainants' only ground of dissatisfaction was simply the technical fact that (as he believed) defendant had breached the covenant — "had disregarded the law." No other owner or occupant of any lot in the tract complained; complainant was not the original covenantee, was not himself a resident on the tract, showed no dissatisfaction on the part of the tenant occupying complainants' lot, showed no fear of depreciation of rental value or sale value of his lot because of this addition; his sole reason for bringing the suit was obviously simply a desire to prevent defendant from doing a thing which was not of the slightest importance to complainant for any other reason whatever except the academic fact that (as complainant believed) defendant was under a legal obligation not to do it.
While there seems to be much authority for the principle that a covenantee need not prove any damage to entitle him to an injunction against a breach of a restrictive covenant, it must be said that it is difficult to see any logical or sensible reason as to why a court of equity and good conscience should countenance or permit the taking of the time of the court and of the witnesses in the attempt to impose a hardship on defendant, by a suit under the circumstances and for the sole purpose just mentioned. It would seem that under such circumstances the bill should be dismissed even if the court were satisfied that a technical breach of covenant had been committed by defendant. *Page 459 
These considerations may not be of great materiality in the instant case, since the bill must be dismissed for the reasons previously stated; but they are nevertheless pertinent in a consideration as to an award of costs and counsel fee.