GALTON v. HEFTLER.

1. COVENANTS—BUILDING RESTRICTIONS—INTERPRETATION.
    When the language of a building restriction is couched in a few
    English words of common use and general understanding the
    court must accord them their ordinary or popular sense in the
    accomplishment of the purpose the words as a term express.

2. SAME—BUILDING RESTRICTIONS—GARAGE—REAR PORTION OF LOT.
    Building restriction in residence subdivision providing that
    "garages shall be built only in the rear portion of all lots"
    held, to limit erection of garages, whether attached to, or de-
    tached from, the residence, to that portion of the lot lying
    entirely behind the rear wall of the dwelling house, not neces-
    sarily the rear half of the lot.

3. INJUNCTION—WAIVER—ESTOPPEL—VIOLATION OF BUILDING RE-
    STRICTION.
    In suit to enjoin erection of attached garage at end of house but
    not at rear thereof, fact that $1,500 to $2,000 worth of work
    had been done on house to cost $16,000 or more when suit was
    commenced held, insufficient to sustain defendants' claims of
    waiver and estoppel.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted April 8, 1938. (Docket No. 64, Calendar No.
39,984.) Decided June 6, 1938. Rehearing denied
October 3, 1938.

Bill by Emmons B. Galton and others against M.
Ben Heftler and wife to restrain the violation of à
restrictive covenant in a deed. Bill dismissed.
Plaintiffs appeal. Reversed.

*Fildew & De Gree*, for plaintiffs.

*Bodman, Longley, Bogle, Middleton & Farley,* for defendants.

BUSHNELL, J. A restrictive covenant in the deed to defendants' property reads in part as follows:

"No dwelling house shall be erected upon any lot nearer than 35 feet from the front lot line. * * * Garages shall be built only in the rear portion of all lots. There shall be built upon any lot in said premises not more than one single detached dwelling, which shall be used for residence purposes only and occupied by one family only. * * * Any building that may be erected on any lot on the above described property shall not be nearer than 5 feet to the side lines of said lot."

Defendants' lot has a frontage of 70 feet and a depth of 133 feet, on which it is proposed to erect a house costing between $16,000 and $17,000, built of cinder blocks and finished with stucco. At least $1,500 to $2,000 worth of work had been done on the house when suit was commenced. The plans show that the front of the house is to be set back 35 feet from the front lot line and that a two-car garage is to be attached to the side of the dwelling and made an integral part thereof. The front of the garage is to be 45 feet from the front lot line and its doors are so planned that cars may be driven directly into the garage from the street. The side wall of that part of the building housing the garage is five feet and one inch from the side lot line.

A number of dwellings in this locality contain attached garages but their entrances are either in the rear or side.

Upon complaint of other property owners in the same subdivision and after the taking of proofs, the

trial judge said that the common sense interpretation of these restrictions appears to be:

"If the owner of a lot desires to have a separate garage, he must build that separate garage on the rear portion of the lot. If, however, he desires to have a garage and make it an integral part of his dwelling, it then becomes a portion of a single dwelling house under the express wording of the restriction."

The trial court held that, under the latter circumstances, the restriction requiring garages to "be built only in the rear portion of all lots" did not apply. A decree was entered dismissing plaintiffs' bill of complaint and they appeal.

The built-in garage is a fairly new architectural development and we have not had occasion to pass upon the precise question at hand. Compare *McGregor* v. *Peabody*, 240 Mich. 425 (54 A. L. R. 657). Our attention is called to *Murtha* v. *McGarry*, 112 N. J. Eq. 454 (164 Atl. 698), in which the New Jersey court passed upon a building restriction covenant which provided that the owners:

" 'Shall not * * * erect * * * upon the * * * premises or any part thereof, any building * * * for any purpose than as a private residence or dwelling house, * * * but * * * necessary and suitable garages and out-buildings may be erected on the rear of the lot.' "

The court said:

"Obviously, his (the covenantor's) general design was to develop the tract as a residence tract, * * * he wanted nothing but a general residence building (which might or might not include a room for housing a private car), on the front of the lot— other separate buildings might be built if intended

for proper auxiliary residential purposes ('necessary and suitable')—but must be kept at the rear of the lot. The language of the covenant is perfectly susceptible of the interpretation that it was intended to accomplish the foregoing purposes and nothing more; that it was intended to keep a garage strictly to the rear of the lot *only* in case it was a separate building; that the intent was, not that *automobile housing* should be restricted to the rear of the lot, but that *separate buildings* should be restricted to the rear of the lot.''

We are not in accord with the views expressed in the *Murtha Case.*

It may be that the language of the restriction could have been better expressed but its meaning is plain. When a restriction is ''couched in a few English words of common use and general understanding, * * * we must accord them their ordinary or popular sense in the accomplishment of the purpose the words as a term express. *Seeley* v. *Phi Sigma Delta House Corp.,* 245 Mich. 252, 254.

The restriction in question was imposed in 1916, but we are not aware of any circumstances then existing which indicate that the word ''garage'' was used in the instant restriction to be something other than it is now generally understood to signify, namely a building for the storage of automobiles. It may be that attached garages were not widely used at that time but the purpose of such structures is precisely the same as that of detached garages which were then perhaps more common. The language of the restriction is broad enough to include any structure used as ''garage'' as that term is above defined.

It is claimed that the words ''rear portion'' are uncertain in their meaning or, at most, mean at or

near the rear lot line, in which latter case the restriction is unenforceable because it was violated by all the attached garages in the subdivision. We do not agree with this contention. The words "rear portion" do not necessarily mean the rear half of the lot, as stated by the trial judge, but rather that part of the lot in the rear of the dwelling. The language of the restriction applied to an attached garage limits its erection to that portion of the lot lying entirely behind the rear wall of the dwelling house.

The building of a garage extending beyond the rear wall of the house is, therefore, a violation of the restriction in question. We do not find sufficient evidence to sustain defendants' claims of waiver and estoppel. *McNair* v. *Raymond,* 215 Mich. 632.

The decree dismissing the bill of complaint is vacated and one may be entered here permanently enjoining the erection of a garage in the front portion of the lot, either detached or in conjunction with the proposed dwelling house. Costs to appellant.

WIEST, C. J., and BUTZEL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.