RICH *v.* ISBEY.

1. COVENANTS—RESTRICTIONS AS TO HEDGES—ABANDONMENT.

>   In suit to restrain the maintenance of a hedge in violation of restrictions in deeds to lots in a subdivision, violations in vicinity of property of parties and in general throughout the subdivision *held,* so extensive as to indicate such an abandonment of the restriction as not to entitle plaintiff to removal of hedge.

2. SAME—RESTRICTIONS AS TO FENCES—DE MINIMUS NON CURAT LEX.

>   In suit to enjoin maintenance of woven wire fence in violation of restriction in deeds to lots in residential subdivision where restriction permitted erection of such a fence 4 feet high, defendant erected one 6 feet high and plaintiffs subsequently raised the level of their adjacent lot 1½ to 2 feet, no equitable relief is granted plaintiff since the slight deviation cannot materially affect plaintiffs' property and maxim *de minimus non curat lex* is applicable.

>   BUTZEL, C. J., and WIEST and SHARPE, JJ., dissenting.

Appeal from Wayne; Richter (Theodore H.), J. Submitted June 7, 1939. (Docket No. 19, Calendar No. 40,485.) Decided November 9, 1939.

Bill by Hampton E. Rich and wife against Frank N. Isbey and wife to enforce lot restrictions. From decree rendered, defendants appeal and plaintiffs cross-appeal. Reversed.

*Hitt, Brewer & Haass* (*Roy G. Holmes,* of counsel), for plaintiffs.

*Stanley E. Beattie* (*Louis H. Fead,* of counsel), for defendants.

NORTH, J. This suit is one to enforce restrictions as to erecting and maintaining fences and hedges in Palmer Woods subdivision in Detroit. From the

decree entered in the circuit court, defendants appealed and plaintiffs cross-appealed.

Palmer Woods subdivision lies adjacent and to the west of Woodward avenue. It is a little more than a half mile in length and a little less than a half mile in width and contains 368 lots. Plaintiffs' home is on lot 329 which fronts southeasterly on the curve of Argyle Crescent. This is near the extreme northwesterly corner of the plat. Defendants own the three lots next westerly and southerly of plaintiffs' lot. These three lots also front on the curve of Argyle Crescent. Defendants' dwelling is located on lot 326 and their lots 327 and 328 lie between lot 326 and plaintiffs' lot 329. Defendants have erected a 6-foot woven wire fence from the rear of their lot 328 along their easterly boundary line to a point 50 feet from the street line. From the end of the wire fence to the street and southwesterly along the street line of lot 328 defendants have a hedge which is 6 or 7 feet high. Defendants assert the right to maintain this fence and the hedge on the ground, among others, that the restrictions pertaining to fences and hedges "have been abandoned and waived, and that said abandonment and waiver were open, visible and notorious at the time of the purchase by plaintiffs of their property in said subdivision." The claimed abandonment and waiver are denied by plaintiffs.

All or nearly all of the deeds of the lots in this subdivision from the corporate owner of the plat contain uniform restrictive provisions; and these provisions are in the deeds under which these litigants took title. The deeds recite that these restrictive provisions shall run with the title to the land. The particular restrictions involved in this suit read:

"All boundary lines shall be designated by hedges or woven wire fences with iron posts of a pattern to be approved by said first party and not to exceed 4 feet in height. No fence, hedge or wall shall be erected between the street and the building line of said lot nor on the side lines for a distance of 50 feet back from the front lot line."

The plat of this subdivision was recorded in 1915. Plaintiffs purchased their property in May, 1936. Defendants became the owners of their lot number 328 in February, 1937; but they had owned and occupied their present residential property for some time prior to plaintiffs'- purchase of lot 329. The record contains considerable testimony touching the time and the manner of violations in this subdivision of the quoted restrictions, particularly the restriction pertaining to hedges. Exhibit A offered and received in evidence is a copy of the plat of this subdivision on which by appropriate markings is indicated the location and extent of restriction violations. From this exhibit one easily visualizes the extent to which the restrictions have been ignored. It appears from the record these violations antedated plaintiffs' purchase of their property. Further, the following pertinent facts as to the abandonment of the quoted restrictive provisions appear in the record. Within a radius of 500 feet from the front of plaintiffs' lot there are at least seven violations of the restriction against maintaining hedges, exclusive of those on defendants' property. In what may reasonably be considered defendants' immediate neighborhood, there is a large number of violations; and violations extend more or less throughout the entire plat. From exhibit A it appears there is not a single block on the plat on which there is not some violation of this restriction. At what seems to be the main entrance to the plat there is a so-

called hedge extending along the front of 11 consecutive lots. Some portions of this so-called hedge are 18 feet in height. In the plat as a whole, hedges in violation of the quoted restriction are maintained in front of approximately 63 lots and on the side lines of approximately 100 lots. Of the 368 lots in the subdivision, 137 are unimproved. Thus the large proportion of restriction violations on the remaining 231 improved lots appears.

From the foregoing the only conclusion to be reached is that during the years intervening between the inception of the development of this subdivision and the time when plaintiffs purchased their property the quoted restriction as to the maintenance of hedges on the front lines and side lines of the lots has been wholly subverted and abandoned by repeated and continued violations. Hedges are so numerous and so generally prevalent throughout the subdivision that knowledge of such abandonment would result from the most casual observation. Unquestionably many of these hedges have been maintained for such a period that no one could now successfully complain. Violations have been so general that it seems inequitable to permit the owners of many of these parcels to maintain hedges but to say to their neighbors, "You cannot." *Miller* v. *Ettinger*, 235 Mich. 527. Because of the abandonment of the pertinent restrictive provision plaintiffs are not entitled to a decree requiring defendants to remove the hedge involved in this suit.

As above stated the woven wire fence erected by defendants on the division line between their property and that of plaintiffs is 6 feet in height. But the record discloses that by grading their lot plaintiffs have raised the surface thereof to a level, as Mr. Rich testified, "1½ to 2 feet." Because of this change in surface levels, the wire fence erected

by defendants on their property is, as a matter of fact, but slightly in excess of the height permitted when measured from the surface level of plaintiffs' property. Surely such a slight deviation could not materially affect plaintiffs' property for residential purposes. We think it is too petty to justify granting equitable relief, which at most would only result in lowering the height of the fence a fraction of a foot. The maxim: *"De minimus non curat lex,"* should be applied here, as it was in *Ungrich* v. *Shaaf,* 119 App. Div. 843 (105 N. Y. Supp. 1013).

The decree in the circuit court required defendants to reduce both the wire fence and the hedge between lots 328 and 329 to a height not exceeding 4 feet above the surface of plaintiffs' lot and the front line hedge to a like height. Since the restriction as to hedges has been wholly nullified by repeated and continued violations throughout the subdivision, there appears in this record no justification for the provision in the decree restricting the height of defendants' hedge to 4 feet.

For the reasons above indicated we are constrained to hold that the decree entered in the circuit court must be reversed. A decree will be entered in this court dismissing plaintiffs' bill of complaint, with costs of both courts to defendants.

BUSHNELL, POTTER and CHANDLER, JJ., concurred with NORTH, J.

BUTZEL, C. J. (*dissenting*). Plaintiffs and defendants are the owners of neighboring homes in Palmer Woods subdivision in Detroit. Palmer Woods is a beautiful parklike subdivision bounded on the east side by Woodward avenue and on the south side by Seven Mile road, and extending northerly and westerly about one-half mile. It contains 368 lots and is traversed by numerous winding streets. The ex-

hibits show that the subdivision was appropriately named for it contains many trees and shrubs. The lots are spacious and much has been done to preserve their natural beauty. In the deeds under which the individual lots were sold, there appear certain building restrictions. Those applicable to the present case are as follows:

"All boundary lines shall be designated by hedges or woven wire fences with iron posts of a pattern to be approved by said first party and not to exceed 4 feet in height. No fence, hedge or wall shall be erected between the street and the building line of said lot nor on the side lines for a distance of 50 feet back from the front lot line. Pergolas shall not extend beyond the front building line of any residence nor nearer than 5 feet to the side or rear of lot line."

No setback or building line, however, is specifically provided for in either the plat or the deeds. The only reference to such a line applies to the erection of garages on the property. The owner agrees that he will obtain the written approval of the subdivider to his plans as to the construction and location of any residence or garage before beginning the building.

Plaintiffs purchased lot 329 of Palmer Woods in the spring of 1936 and proceeded to build an attractive house thereon. In grading the lot, plaintiffs raised it more than a foot above the level of the neighboring property. Less than a year later, defendants purchased the adjoining lot 328, which is located at the extreme northwest corner of the subdivision; they owned, as well, lots 327 and 326. On lot 326 they had erected a beautiful residence. They also landscaped lot 327, but left lot 328 unimproved. It remains uncleared and covered with weeds, wild shrubbery and a few trees.

Motivated by an instinct for privacy and separateness, defendants caused to be erected in March, 1937, a woven wire fence, 6 feet high, extending along the east side of vacant lot 328 at the boundary of plaintiffs' property, beginning from the rear of the property and extending to a point about 50 feet from the street line. Separation of the two lots was further effected by a row of shrubs along the boundary from the end of the fence to the sidewalk. Another row of shrubs was planted along the front line of the street the entire width of lot 328. In this seclusion, among homes and gardens of natural and cultivated beauty, the casual eye might have expected peace and harmony among the neighboring residents. Such, however, was not the case. Dispute over the propriety of maintaining the fence and hedges has grown so serious that final determination by this court on appeal and cross appeal has become necessary. Peaceful adjustment of such a controversy would not only have eliminated a burden to the docket, but the rancor which has inevitably been aggravated by litigation. The comparative insignificance of the ultimate consequences does not, of course, preclude the parties from enforcement of their strict legal rights.

Plaintiffs' bill, filed in July, 1937, asked a decree ordering defendants to reduce to 4 feet the height of the fence and row of bushes along the eastern boundary of lot 328, and to remove entirely the hedge running parallel to the street. The trial judge heard abundant evidence and personally viewed the premises. He ordered reduction of the fence to 4 feet above the surface of plaintiffs' raised lot, and reduction of the two rows of bushes to a similar height. Defendants have appealed from these mandatory directions. Plaintiffs' cross appeal asks that the height of the fence be measured from the

ground on which it stands, and prays total liquidation of the front and side hedges. In this latter claim, plaintiffs rely on their general prayer for relief, the original bill having specifically asked for reduction in the size of the side hedge and the removal of the one in front of the lot.

We agree with the trial court that the restrictions are not fatally defective for ambiguity or uncertainty because no building line was defined in the plat or the deeds. The prohibition is against fences or hedges ''between the street and the building line.'' The sense and purpose of such a provision are reasonably apparent regardless of the exact point at which a building line might be set. Undoubtedly there is room to conjecture, as defendants argue, that a building on lot 328 might possibly be erected on the front of the property so as actually to touch the sidewalk, in which case there would be no room for a practical ''building line'' governing placement of the hedge. There would also be no room for the hedge. Ordinarily, the language of a restriction will be accorded an interpretation which preserves the obvious purpose and intention of its framers. *Galton* v. *Heftler,* 284 Mich. 445. The building line of the street is not definite for all purposes, but any building which would be erected on lot 328 would normally stand some distance back of the row of bushes which lie parallel to the sidewalk. In determining the ordinary operation of the restrictive language, we cannot assume that even the most litigious property owner would deliberately deface his property by building a residence within a few feet of the street line. The hedge and fence along the side of the lot are within the clear language of the restriction.

We further agree with the trial court that the various violations of the restrictions throughout

Palmer Woods subdivision were not so extensive as to make for subversion of the original plan. The subdivided area is large. Although defendants' exhibits show that in some portions these restrictions have been more marked by their breach than their observance, no serious violations, particularly of the restriction against front line hedges, are shown in the immediate vicinity of the property here involved. Tolerated violations only a few hundred yards away but on an entirely different street do not necessarily indicate abandonment throughout the subdivision. *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co.*, 283 Mich. 304, 310. We continue to enforce the rule restated in that case, that in the absence of estoppel, a restriction will normally be enforced when it remains of any substantial benefit to the party seeking to uphold it. The trial judge found that the restrictions had a substantial value to plaintiffs. We shall not enter into a discussion of the psychological effect of a fence bordering one's property. After a careful examination of the record, we sustain the findings of the lower court in this regard.

Defendants have argued, although somewhat perfunctorily, that plaintiffs estopped themselves from objecting to the violation of the restrictions. It is not claimed that plaintiffs actually consented to the construction of the fence or planting of the hedges. Whether they actually knew that defendants contemplated breaching the restrictions is doubtful. Plaintiffs claimed they were absent from the city when the fence was actually installed, and protested immediately upon return. They commenced action less than four months later. The record does not indicate that defendants seriously believed that their violations would be acquiesced in by plaintiffs. Where, under such circumstances, defendants deliberately violated valid, subsisting restrictions,

they cannot excuse their acts with the argument that they should sooner have been prevented from carrying their intentions into effect. *Michiana Shores Estates, Inc.,* v. *Robbins,* 290 Mich. 384.

Plaintiffs' original bill alleged that defendants were violating the restrictions ''by maintenance of a hedge exceeding 4 feet in height on the eastern boundary of said lot 328, running from the point where the aforementioned fence commences to the front lot line of said lot 328.''

The bill specifically prayed reduction of this hedge to a height not exceeding 4 feet above the surface. They further recognize the existence of side hedges in the neighborhood by asserting in their bill of complaint that defendants' hedge and fence break the uniformity of the hedges and fences in the neighborhood. Later, in submitting a proposed decree, plaintiffs demanded complete removal of the hedge, but the trial judge limited relief to the original specific prayer. Plaintiffs' original position reflects an uncertainty about the validity and extent of the restrictions which was evidently shared by the trial court. Although there may be a certain logic to plaintiffs' present position, the trial judge, after inspection of the scene, undoubtedly sought to weigh the equities of the situation in framing relief under the decree. By it plaintiffs received all that they originally demanded, and under all the circumstances we are not disposed to allow those demands to be increased by the formal wording of a prayer for such other and further relief ''as may be consistent with equity and good conscience.''

The trial judge tried to do substantial equity in a difficult situation. In the main, we agree with him. The side hedge and the wire fence were properly ordered reduced to 4 feet. Plaintiffs contend that this distance should be measured from the level on

which the fence and hedge stand rather than from the raised level of plaintiffs' adjoining property. Assuming that plaintiffs legitimately elevated their land 12 to 18 inches, it would logically follow from their own theory that they would be entitled to erect a fence 4 feet above that raised level, or more than 5 feet above the level of the neighboring property. We think that the only equitable interpretation of the meaning of the restriction entitles defendants to raise a fence or hedge of equal height, whether or not they first raise the level of the land on which they are set.

The front hedge, since it plainly violates the restrictions, and since such relief was originally prayed by plaintiffs, should be removed. Such removal does not necessarily imply a complete destruction of all the constituent shrubs. Defendants may maintain plantings of unlimited height so long as they are not arranged with such regularity as to come within the prohibition of hedges. Clumps of bushes now on the property may remain provided that the surface bases of each clump shall be at least 20 feet apart. Defendants have suggested that other plantings which might be made on the vacant lot could as effectively restrict or interfere with plaintiffs' view and enjoyment of the property as the present fence and hedges. The present decree cannot prevent such action; enforcement of the restrictions, on the other hand, should not be prevented by threats of circumvention.

A decree should be drawn in accordance with the foregoing opinion. As neither appellant nor cross-appellant has fully prevailed, there should be no costs in this court.

WIEST and SHARPE, JJ., concurred with BUTZEL, C. J. McALLISTER, J., did not sit.