*In re* NORDWOOD ESTATES SUBDIVISION.

1. EMINENT DOMAIN—RECIPROCAL NEGATIVE EASEMENTS—REPORT OF COMMISSIONERS.

In proceedings to condemn land for relocation of railroad through a subdivision incident to widening of a highway where owners of land not taken claimed damages for alleged violation of reciprocal negative easement rights and two of three commissioners appointed by probate court reported no damages to such owners while other reported there was a violation of restrictions with consequent damage, probate court could set aside the majority report and refer the matter back to the same or other commissioners to retry the matter but the court's action in holding the restrictions violated was in excess of its power and a nullity (1 Comp. Laws 1929, §§ 3899, 3902).

2. SAME—PROBATE COURT ORDERS—REVIEW—STATUTES.

In condemnation proceedings for relocation of railroad through a subdivision incident to widening of a highway, until a proper report of compensation by appraisers and the amount thereof is confirmed, the right of review remains where statute permits application for review by certiorari within 20 days after report of the appraisers has been confirmed and such review is not barred by failure to appeal from a void order of the probate court entered previous to one appealed from (1 Comp. Laws 1929, §§ 3899, 3902, 3910).

3. SAME—RAILROAD—SUBDIVISIONS—RESTRICTIONS.

Relocation of railroad through a subdivision was not a violation of alleged reciprocal negative easements for residence purposes where restrictions related to cost of residences to be built thereon and their set-back lines and prohibited use for manufacturing purposes or sale of intoxicating liquors.

4. COVENANTS—CONSTRUCTION OF RESTRICTIONS—FREE USE OF LAND.

Restrictions upon otherwise free use of land are in the nature of covenants running with the land, must be explicit in terms,

and cannot be enlarged or extended, if unambiguous, by construction or circumstances of user.

5. Same—Ambiguities—Construction of Restrictions.

Uncertainties in ambiguous restrictions are resolved in favor of the free use of property.

Appeal from the Probate Court of Oakland County; Lynch (James H.), J. Submitted November 24, 1939. (Docket No. 41, Calendar No. 40,763.) Decided December 20, 1939.

Condemnation proceeding by Murray D. Van Wagoner, State Highway Commissioner, to procure certain lands, including property located in the Nordwood Estates Subdivision, for use in the relocation of railroad tracks. State Highway Commissioner and Grand Trunk Western Railroad Company review order of probate court confirming commissioners' award by appeal in the nature of certiorari. Reversed.

*Thomas Read,* Attorney General, *Edmund E. Shepherd* and *A. Floyd Blakeslee,* Assistants Attorney General, for State Highway Commissioner.

*H. V. Spike* and *John J. Gafill,* for Grand Trunk Western Railroad Company.

*Raymond M. Shock* and *Frank W. Atkinson,* for defendants.

Wiest, J. This is an appeal in the nature of certiorari to review an order of the probate court for the county of Oakland, entered February 8, 1938, confirming an award by appraisers of damages for violation of reciprocal negative easements in relocating railroad tracks. Widening of Woodward avenue in the township of Royal Oak, Oakland county, required

removal and relocation of the four-track system of the Grand Trunk Western Railroad Company, and the State highway commissioner, under statutory power, 1 Comp. Laws 1929, § 3884 *et seq.,* as amended by Act No. 216, Pub. Acts 1931 (Stat. Ann. §§ 8.171–8.200), relocated the tracks through a recorded plat, known as Nordwood Estates subdivision, having the following restrictions:

"No buildings to be used for residence purposes shall be erected on said lots, the cost of which shall be less than $3,000. No building shall be erected on said premises nearer than 30 feet from the front lot line thereof. Said premises shall at no time be used or occupied for manufacturing purposes nor for the sale of spirituous or malt liquors or conduct of the liquor business at wholesale or retail."

The regularity of the proceedings taking the needed land is not questioned, but the owners of land not taken claimed damages for alleged violation of reciprocal negative easement rights.

The probate court appointed three commissioners to appraise such damages, if any, and in May, 1932, two of the commissioners reported there was no damage and one reported that in his opinion there was a violation of the restrictions, with consequent damage as claimed.

The court had power, on cause shown, to set aside the report and refer the subject matter back to the same commissioners or appoint other commissioners to retry the questions involved. 1 Comp. Laws 1929, § 3902 (Stat. Ann. § 8.190).

June 29, 1932, the probate court set aside the majority report and adopted the minority report and held, as a matter of law, the construction and operation of the railroad through the subdivision was in violation of the restrictions with consequent damage to lots therein and ordered the same commissioners

to appraise and report such damages. The action of the court in holding the restrictions violated was in excess of power and a nullity. No appeal was taken from such order and, December 29, 1936, the commissioners filed their appraisal of damage to each lot diminished in value by violation of the restrictions.

In August, 1937, the State highway commissioner and the railroad company filed objections to confirmation of the appraisal, contending that restrictions had not been violated, the former order of the court was a nullity; and later filed added objections. The matter came to hearing before a successor judge of probate and he was of the opinion that the former judge had authority to set aside the report of the commissioners made in 1936, and ''since counsel on both sides appeared before the commissioners I do not think they can now legally claim the commissioners had no authority to act,'' and February 8, 1938, overruled the objections and held that the order by his predecessor was binding upon the court in all particulars and, with slight modification, in form, confirmed the report of damages.

Does the unappealed order, finding violation of the restrictions and directing the commissioners to appraise the damages, bar review at this stage of the proceedings?

1 Comp. Laws 1929, § 3899 (Stat. Ann. § 8.187), provides:

''The court commissioners shall appraise the damages to be paid as compensation to each person interested in each such piece or parcel of property, and shall report such decision in writing, signed by them or a majority of them.''

The report, signed by a majority of the commissioners, was the report before the court upon which action was to be taken. The court had power, on

cause shown, to set aside the report and refer the subject matter back to the same commissioners or appoint other commissioners to retry the questions involved. 1 Comp. Laws 1929, § 3902 (Stat. Ann. § 8.190). The action of the court in holding the restrictions violated was in excess of power and a nullity.

Until a proper report of compensation and the amount thereof is confirmed the right of review remains. 1 Comp. Laws 1929, § 3910 (Stat. Ann. § 8.198), permits an application for review by certiorari within 20 days after report of the commissioners has been confirmed, and this means confirmation of the compensation and amount thereof to be paid. The review is timely.

Does the location of the railroad violate the restrictions? If it does not, then there can be no award of damages under the doctrine of reciprocal negative easement rights. If the restrictions confined use to residential purposes, the railroad would be a violation, but the use is not so confined, and the restriction relating to cost of residences, with set-back distance, cannot be enlarged to the point of limiting use to residences only.

In *Holliday* v. *Sphar,* 262 Ky. 45, 50 (89 S. W. [2d] 327), the court held:

"The essence of the restrictions is, if the owner erects a residence thereon, the same shall cost not less than the sum designated in the deed, and not nearer the street fronting the same than the distance fixed in it. At most, such are no more than limited 'building restrictions,' and not a limitation on the free use of the land."

The restrictions speak all imposed.

It is stated in the brief for appellees:

"The restrictions in question are loosely drawn, and while they indicate clearly that the subdivision

was put on the market as a residence subdivision there is no language in the restrictions specifically limiting the property to residence purposes. There is a specific restriction against the erection of manu-facturing buildings or the conduct of manufacturing business in the subdivision but it is conceded that churches, stores, schools and buildings of like char-acter not in themselves incompatible with a residence subdivision would not violate the restrictive cove-nants. It is contended, however, on the part of the property owners that the construction of a railroad through a subdivision is a violation of the general plan disclosed by the restrictions themselves, the tes-timony of certain witnesses and the development of the subdivision itself for residence purposes only.''

In this jurisdiction we consider restrictions upon otherwise free use of land in the nature of a covenant running with the land, and they must be explicit in terms and cannot be enlarged or extended, if un-ambiguous, by construction or circumstances of user. The rule of strict construction of unambiguous terms employed in imposing restrictions on use of platted land has been repeatedly announced by this court. *James* v. *Irvine,* 141 Mich. 376; *Casterton* v. *Plotkin,* 188 Mich. 333; *Hill* v. *Rabinowitch,* 210 Mich. 220; *De Galan* v. *Barak,* 223 Mich. 378; *Austin* v. *Kirby,* 240 Mich. 56; *Kelly* v. *Carpenter,* 245 Mich. 406; *Phillips* v. *Lawler,* 259 Mich. 567. Even where re-strictions are ambiguous, uncertainties are resolved in favor of the free use of the property. *Bastendorf* v. *Arndt,* 290 Mich. 423 (124 A. L. R. 445).

There being no violation of reciprocal negative easement rights, the award of damages is reversed, with costs to appellants.

Butzel, C. J., and Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.