KELLY, J.
(dissenting). This is a dispute over a dog park. Three years ago, defendant city of Birmingham fenced off one acre of property in a city park[1] to allow dogs to run off-lead under the supervision of their owners. Plaintiff Bloomfield Estates Improvement Association, Inc., sued to block defendant from this use by seeking to enforce a deed restriction that limited portions of the park to residential purposes. A majority of this Court holds that using the lot as a dog park violates the deed restriction. It also holds that plaintiff can enforce the deed restriction even though plaintiff failed to object to use of the lot as a park for over 75 years. Because I disagree on both points, I respectfully dissent.
FACTS
This case arises out of defendant’s use of lot 52 of Bloomfield Estates Subdivision. Deed restrictions on *228 the lot were recorded in 1915 by the Bloomfield Estates Company. The relevant language states that “[ejach lot or lots shall be used for strictly residence purposes only and no buildings except a single dwelling house and the necessary out-buildings shall be erected or moved upon any lot or lots....” In 1928, Bloomfield Township purchased lot 52. It planned to use the land as part of a park. Later that year, the township opened the park, and lot 52 has been parkland since that date. In 1938, defendant city of Birmingham acquired the park from the township and renamed it Springdale Park. Since its opening, various improvements have been made, including addition of a baseball diamond, golf course, community house, and clubhouse.
In 2004, defendant fenced off a grassy part of lot 52 to be used exclusively as a dog park.[2] After construction of the off-leash dog area, plaintiff, which had been deeded the rights of Bloomfield Estates Company in 1955, sued to close the dog park. Defendant moved for summary disposition, and the trial court granted the motion, finding that plaintiff had not shown that defendant’s use of the lot violated the deed restriction. Plaintiff appealed. In a two-to-one decision, the Court of Appeals reversed. Unpublished opinion per curiam of the Court of Appeals, issued March 14, 2006 (Docket No. 255340). The Court of Appeals majority found that use of the lot as a park violated the deed restriction. It also found that plaintiff had acquiesced in the use and that plaintiff could no longer seek enforcement of the deed restriction against that use. However, the majority limited the acquiescence to the actual use to which plaintiff had acquiesced. And because it found that a dog park was a *229 more serious violation of the restrictive covenant, the majority held that plaintiff could enforce the deed restriction against that use. Accordingly, the majority remanded the case to the trial court for entry of summary disposition in plaintiffs favor. Judge BORRELLO dissented. He would have found that plaintiff waived its objection and was barred from bringing an action to enforce the deed restriction.
Plaintiff applied for leave to appeal in this Court. We granted the application and directed the parties to include among the issues to be briefed “whether the use of Bloomfield Estates Subdivision lots in Spring-dale Park violates the deed restrictions, whether plaintiff is estopped from seeking enforcement of the deed restrictions, and what remedies may be available if there are violations of the deed restriction.” 477 Mich 958 (2006).
STANDARD OF REVIEW
This court reviews de novo a decision whether to grant or deny a motion for summary disposition. Haynes v Neshewat, 477 Mich 29, 34; 729 NW2d 488 (2007). The scope of a deed restriction is also reviewed de novo. Terrien v Zwit, 467 Mich 56, 60-61; 648 NW2d 602 (2002).
USING THE LOT AS A DOG PARK DOES NOT VIOLATE THE DEED RESTRICTION
The relevant portion of the deed restriction provides that lot 52 must be used for residential purposes. The initial consideration, therefore, is whether a dog park is consistent with a residential purpose. If it is, then the restriction has not been violated. Only if use as a dog park is not a residential purpose must the Court decide whether to enforce the restriction against the dog park.
*230 In giving meaning to the phrase “residential purpose,” an important concept should be considered. This Court has long held that restrictions on the otherwise free use of land must be explicit in terms and cannot be enlarged or extended by construction. In re Nordwood Estates Subdivision, 291 Mich 563, 568; 289 NW 255 (1939). As recently as eight years ago, we reiterated our rule: restrictive covenants are to be strictly construed against the party seeking to enforce them and all doubts resolved in favor of the free use of property. O’Connor v Resort Custom Builders, Inc, 459 Mich 335, 340; 591 NW2d 216 (1999).
Although Michigan courts have been called on to construe restrictions containing language similar to the covenant involved here, no Michigan court has ever explicitly defined the phrase “residential purpose.” The majority now does that. In giving meaning to the phrase, it relies heavily on a dictionary and defines “residential purpose” to include only “a ‘single dwelling house’ and immediately related purposes.” Ante at 215. On the basis of this definition, the majority finds that use as a dog park is not a residential purpose.
The majority’s decision is flawed for several reasons. First, ignoring this Court’s long-established principle of construction, it construes the deed restriction against, not in favor of, the free use of property. The majority spends pages discussing the right to contract, never even mentioning the fundamental right of a landowner to use his or her property as he or she sees fit.[3] Because of the vital importance of this right, any restriction on *231 the future use of real property must be drawn with particularity. O’Connor, 459 Mich at 340. The restriction at issue allows the property to be used for residential purposes. Rather than interpreting this phrase broadly to protect the owner’s right to use the property, the majority interprets it in an extremely narrow fashion. This is error.
Second, the majority’s definition essentially reads language out of the deed restriction. The full restriction provides that “[e]ach lot or lots shall be used for strictly residence purposes only and no buildings except a single dwelling house and the necessary out-buildings shall be erected or moved upon any lot or lots ....” There are two components to the restriction, one limiting the use of the lots to residential purposes and a second prohibiting “buildings except a single dwelling house and the necessary out-buildings.” By defining residential purposes to include only single dwelling homes and immediately related purposes, this Court reduces to a redundancy the language prohibiting buildings other than single dwelling houses. If residential purposes include only “a ‘single dwelling house’ and immediately related purposes,”[4] then the language in the restriction explicitly limiting buildings to single dwelling houses would be unnecessary. It is well established that a construction that would entirely neutralize part of the language that is being construed should be discarded. See, e.g., DeBoer v Geib, 255 Mich 542, 544; 238 NW 226 (1931).
Because the majority’s dictionary-derived definition of “residential purposes” violates well-established rules of construction and reduces other language in the restriction to a redundancy, it must be rejected. In its place, I would accept the definition adopted by most other states.
*232 Here are but a few of them: In 1994, the Indiana Court of Appeals decided whether the defendants’ use of their property as a baseball facility violated a restrictive covenant limiting the property to residential purposes. Bagko Dev Co v Damitz, 640 NE2d 67, 68 (Ind App, 1994). Because the covenant did not define the term “residential purposes,” the court found it necessary to give it meaning. Id. at 70. After reviewing caselaw from other jurisdictions, the court concluded that a use is for residential purposes as long as the use is “ ‘distinguishable from commercial or business use.’ ” Id. at 70 (citation omitted). And because the defendants were not using the baseball diamond for business or commercial purposes, the court held that the restrictive covenant had not been violated. Id. at 71.
Similarly, in 1992, the New Hampshire Supreme Court decided that using property as a dock did not violate a deed restriction that limited its use to residential purposes. Voedisch v Town of Wolfeboro, 136 NH 91, 96; 612 A2d 902 (1992). The court held that “covenants restricting the use of property to ‘residential purposes’ merely limit the use of the property to living purposes as distinguished from business or commercial purposes.” Id.
And in 1985, the Texas Court of Appeals was called upon to decide whether building a tree house on a lot violated a residential purposes restriction that ran with the deed. Winn v Ridgewood Dev Co, 691 SW2d 832, 833 (Tex App, 1985). The court held:
The term “residential purposes” requires the use of property for living purposes as opposed to business or commercial purposes. Considering only the evidence favorable to the jury’s finding, we can find no evidence that Lot 2 was not being used for living purposes. Since there was no evidence that Lot 2 and the treehouse were being used for business or commercial purposes, the only logical conclu *233 sion is that it was being used for “living purposes” and that the character of the treehouse is consistent with a residential use. [Id. at 835 (citations omitted).]
These three decisions are illustrative of how other states have treated residential purposes restrictions. They are far from exhaustive. As recognized by the American Law Reports, “[a]s a general proposition, restrictive covenants built around the terms ‘residence’ or ‘residential purposes’. . . merely limit the use of the property to living purposes as distinguished from business or commercial purposes.”[5] Many more state court decisions have employed the same reasoning.
These decisions not only reflect the weight of authority across the country, they are consistent with Michigan caselaw. See, e.g., O’Connor, 459 Mich at 340 (“ ‘[a] restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business use’ ”) (citation omitted); Beverly Island Ass’n v Zinger, 113 Mich App 322, 326; 317 NW2d 611 (1982) (“A restriction allowing residential uses permits a wider variety of uses than a restriction prohibiting commercial or business uses.”).
*234 Yet, rather than consider and give weight to these decisions, the majority simply takes out a dictionary and crafts its own definition of “residential purposes.” It ignores learned jurists from this and other jurisdictions representing decades of experience in interpreting the law.
It is not uncommon for this Court to adopt other states’ definitions of legal terms when those states have grappled with similar facts and law.[6] In this case, I would take instruction from some of these jurisdictions *235 and hold that covenants restricting property to residential purposes “merely limit the use of the property to living purposes as distinguished from business or commercial purposes.” Voedisch, 136 NH at 96.
Here, nothing suggests that the dog park has any business or commercial purpose. Rather, owning dogs and walking them is a typical, generally accepted activity for the residents of Birmingham. Accordingly, because a dog park for residents is a living use of municipal land, I would hold that the deed restriction has not been violated.[7] The trial court was correct and its decision should be reinstated.
plaintiff waived the right to object to use OF THE LOT AS A DOG PARK
Because I would hold that the use as a dog park is a residential purpose, I find it unnecessary to determine whether plaintiff waived the right to enforce the deed restriction. But, because the majority holds that plaintiff can enforce it, I will offer my thoughts on this issue.
The majority finds that plaintiff is estopped from contesting use of the lot as a park. Lot 52 has been in a park for at least 75 years. Plaintiff was well aware of this use. Yet, at no time did it object to or take action to stop it. Even now, plaintiff does not ask the Court to prevent lot 52 from reverting to being part of Spring-dale Park. Even if it did, the majority opines, equity would bar plaintiff from preventing use of the land as a *236 park. See Cherry v Bd of Home Missions of Reformed Church in United States, 254 Mich 496, 503-504; 236 NW 841 (1931).
Nonetheless, the majority holds that plaintiff may challenge use of the lot as a dog park. The reason it gives is that a dog park is a more serious violation of the deed restriction than a city park. Once again, I disagree.
In Boston-Edison Protective Ass’n v Goodlove,[8] this Court was called upon to decide whether the plaintiff homeowners association was estopped from enforcing deed restrictions limiting the property in question to single dwelling houses. Goodlove, 248 Mich at 627. The defendant, a practicing physician, had incorporated his medical office into his home and worked there for years without objection. Id. at 628. When the defendant, because of increasing business, decided to build an office building on the land, the plaintiff objected, claiming that this use violated the deed restrictions running with the property. The issue was whether the plaintiff had waived the right to enforce the restriction by failing for years to object to use of the property as a doctor’s office. Id. at 629. The Court decided that the plaintiff could enforce the restriction. It stated:
While it is true that there has been no objection made to the defendant’s practicing medicine at his home and using it as a doctor’s office where patients consulted him, nevertheless, the defendant should not be able to violate further rights of plaintiffs on account of his theretofore slight breach of the restrictive covenants in his deed. Plaintiffs are not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of such restrictions. While it is true that by their acquiescence they may not be able to enjoin defendant from continuing to use *237 his present home to the extent that it has been heretofore used as a doctor’s office, they are still in a position to stop the more serious violation of the restrictions that would result from the erection of a new or adjoining building, one story in height, without basement, etc., which does not conform with the restrictions of the subdivision. [Id. at 629-630.]
Accordingly, the general rule is that a plaintiff is “not estopped from preventing a most flagrant violation of the restrictions on account of their theretofore failure to stop a slight deviation from the strict letter of such restrictions.” Id. at 629 (emphasis added). See also Jeffery v Lathrup, 363 Mich 15, 22; 108 NW2d 827 (1961) (a deed restriction that has been violated in some degree “does not thereby become void and unenforceable when a violation of a more serious and damaging degree occurs”).
In Cherry, this Court applied this rule and decided whether the plaintiff property owners should be es-topped from enforcing deed restrictions that limited use of certain property. Cherry, 254 Mich at 497-499. Despite the fact that the deed restricted the property to dwelling house purposes, the defendant planned to replace its existing church with a new church on the same property. Id. at 499. Ultimately, this Court refused to allow the plaintiffs to enforce the deed restriction.
We are not impressed with plaintiffs’ claim that defendant’s building program will constitute an extension of the violation of the building restrictions which has already been countenanced. It is true the new building as planned will be somewhat larger, will occupy a different portion of the lots and will face on Dexter boulevard instead of Joy road. But a church is a church; and it cannot well be asserted that only so much of a church site as is actually occupied by the edifice located thereon is used for church purposes. It is common practice to use the adjacent lot area for parking purposes. It is by no means uncommon for *238 outdoor church gatherings to make use of the whole or any part of the church yard. Defendant clearly has the right so to use its premises. [Id. at 501.]
Cherry is important because it illustrates that a use that is of the same nature as a previous, unobjected-to use will not amount to a “flagrant violation.”[9] Here, plaintiff acquiesced in the use of the lot as a park. Plaintiff objected only when defendant began using the lot as a dog park. A dog park is of the same nature as a park. Hence, because the proposed use is of the same nature as the unobjected-to use, plaintiff cannot enforce the deed restriction against the dog park. Indeed, just as Cherry determined that the plaintiffs there could not enforce the deed restrictions because “a church is a church,” plaintiff here cannot enforce the deed restriction because a park is a park.[10]
The majority reaches the opposite conclusion and decides that a dog park is a more serious violation. In so doing, it considers a number of statements presumably drawn from the briefs and affidavits used during the *239 motion for summary disposition. Ante at 220-221. However, there are no court findings substantiating these statements. For example, the majority takes as fact that the dog park has generated more automobile traffic. The trial court made no such finding.[11] Also, the majority incorrectly asserts that dogs were prohibited from being on the property before lot 52 was transformed into a dog park. The trial court did not make this finding.[12] Given that defendant contests most or all of these points, it is error for the majority to rely on them as true.[13] See appellant’s brief, pp 26-28.[14]
No factual findings were ever made to suggest that the dog park has brought continual and systematic use of lot 52 where before the use was irregular. Yet, the majority relies on this as a fact. The majority also assumes that establishment of the dog park required a *240 structure where no structure had previously been permitted. No factual findings support that assumption: In fact, it appears that three sides of the lot were already fenced. Given that three sides of the lot were already fenced, it is bizarre, and obviously wrong, for the majority to conclude that no structure previously existed on the lot. If these “facts” are disregarded, as they must be, only one of the statements identified and relied on by the majority remains to support its conclusion: residents of Birmingham have been encouraged to bring their dogs to run off-leash in the dog park. This cannot constitute a more serious violation of the restriction.[15]
Another serious fault of the majority decision is that it effectively gives people broad discretion to pick and choose which violations of the restrictive covenant will be tolerated. This will encourage someone to try to enforce a restriction after a very minor change in usage. Using today’s decision, a plaintiff could disregard for years a use that is arguably contrary to a deed restric *241 tion, then object and prevent another use that is only marginally different. Besides being fundamentally unfair, permitting this pick-and-choose approach will enhance unpredictability in the law and increase lawsuits.
As a result of the above problems, the majority’s approach should be rejected. In its place, I would hold that a use that is of the same nature as a previously unobjected-to use cannot amount to a “flagrant violation.” And because a dog park is of the same nature as a city park, I would find that plaintiff cannot enforce the deed restriction that runs with lot 52.
CONCLUSION
The city of Birmingham has set aside a small fenced portion of one of its parks for the use of city residents and their dogs. Nothing indicates that this grassy acre, called a “dog park,” has actually occasioned annoyance to anyone in the area. There is no evidence that it has been heavily used, is noisy, smelly, or has drawn increased automobile traffic. On the contrary, during the past three years, the dog park appears to have admirably filled a genuine need of dogs and dog owners in the community. It has provided a spot where canine pets can exercise off-leash, safely, under supervision, and without disturbing people.
The only nonspeculative objection raised about this community service is that a deed restriction, confining the land to residential purposes, outlaws it. On this basis, a majority of the Court has effectively closed the dog park. Presumably, now, the land will again be used as a city park, as it was for more than 70 years before. In that way, in the eyes of the law, the use will be proper.
I have great difficulty accepting that the use of this land as a city park conforms to the deed restriction *242 better in any sense than its use as a dog park. My thinking is, if a park is a residential use of the land, so is a dog park. Conversely, if a dog park is not a residential use of the land, then neither is a city park.
No one claims that the dog park exists for a business purpose or for an industrial purpose. In a legal sense, what other purpose remains, aside from a residential purpose? Most other courts have followed this reasoning and have defined a residential purpose to include such things as a baseball diamond, a boat dock, and a tree house. I agree with them.
But even if I did not, and assuming the use is nonconforming, the time has long since passed when plaintiff could be heard to complain. For over seven decades, plaintiffs members have acquiesced in the use of this property as a park. Even now, they express no displeasure in it once again reverting to parkland. But they object to the dog park. How can it be that the Court allows plaintiff to pick and choose which nonconforming use of the land to object to and which to ignore? Surely, in the eyes of the law, after all these years, plaintiff has waived its claim.
This decision is a doggone shame. It has alarming implications for tomorrow’s interpretations of restrictive covenants in Michigan. And, coming as it does during the dog days of summer when all four-legged creatures long to romp outdoors unrestrained, it marks a howling defeat for Birmingham’s canine residents.
WEAVER, J., concurred with KELLY, J.

 The record suggests that the park itself is fenced and restricted to residents of the city of Birmingham, perhaps only to fee-paying residents. Others may be admitted, if at all, only as guests of residents or on an increased fee basis.

 Defendant asserts that three sides of the lot were already fenced before it became a dog park. Appellant’s reply brief, p 2. Plaintiff does not contest that statement.

 The legal concept of property includes the right to freely use the property. “ ‘Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal.’ ” James S Holden Co v Connor, 257 Mich 580, 592; 241 NW 915 (1932) (citation omitted).

 Ante at 215.

 Anno: Restrictive covenant limiting land use to “private residence” or “private residential purposes’’: Interpretation and application, 43 ALR4th 71, 76, § 2[a]. See, e.g., Isbrandtsen v North Branch Corp, 150 Vt 575, 581; 556 A2d 81 (1988) (a deed restricting use to “ ‘residence purposes’ simply limits the use to residential [as opposed to business or commercial] purposes”); Shermer v Haynes, 248 Ark 255, 260; 451 SW2d 445 (1970) (“ ‘[i]t is the weight of authority that [a residential purposes restriction], in and of itself, does not prohibit use of the land for the various types of multiple dwellings, the courts frequently remarking that the effect of the term is only to limit the use of the property to living as distinguished from business or commercial uses’ ”) (citation omitted); Baker v Smith, 242 Iowa 606, 609; 47 NW2d 810 (1951) (“it is the weight of authority that restrictions built around the terms ‘residence’ or ‘residential purposes’, without more, merely limit the use of the property to living purposes as distinguished from business or commercial purposes”).

 See, e.g., Glass v Goeckel, 473 Mich 667, 674 n 4; 703 NW2d 58 (2005) (“We refer to a similarly situated sister state ... for a credible definition of a term long employed in our jurisprudence.”); Dep’t of Civil Rights v Gen Motors Corp, 412 Mich 610, 646; 317 NW2d 16 (1982) (opinion by WILLIAMS, J.) (“while we are certainly not controlled by such case law from other jurisdictions, we can be guided by it when it is determined to be appropriate and sound”). Indeed, it is appropriate to “construe ‘technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law’ according to such peculiar and appropriate meaning.” Greene v A P Products, Ltd, 475 Mich 502, 509; 717 NW2d 855 (2006) (citation omitted). The fact that a large number of sister states have identically defined “residence purposes” indicates that this phrase has attained a peculiar and appropriate meaning in the law. The definition that so many have given the expression is sound.
The majority criticizes me for seeking guidance from sister-state decisions. It would do better to hold a mirror up to its own decision than to criticize mine. As far as I can tell, this Court is the only court in the country that has defined a residential-purpose deed restriction solely by reference to a dictionary definition. The majority may want to consider why no other court in the country has employed the method that it has adopted. Other courts uniformly have followed a method, similar to the one I use, of considering sister-state decisions and established rules of construction. See, e.g., Bagko, 640 NE2d at 70-71; Shermer, 248 Ark at 260.
The majority also claims that the decisions I cite are distinguishable. The deed restriction in this case limits the property to residential purposes. The deed restrictions in the cases I cite limited the properties involved there to residential purposes. Therefore, these sister-state decisions are instructive in interpreting the restriction at issue in this case.

 The zoning ordinances of the city of Birmingham and Bloomfield Township list such things as parks, playgrounds, and recreational facilities as principal uses in residential districts. Because deed restrictions are to he construed in light of surrounding circumstances, these zoning ordinances add support to my conclusion that use as a dog park is a residential purpose. See Brown v Hojnacki, 270 Mich 557, 560-561; 259 NW 152 (1935).

 248 Mich 625; 227 NW 772 (1929).

 This is consistent with prior decisions of this Court. See, e.g., Sheridan v Kurz, 314 Mich 10, 13; 22 NW2d 52 (1946) (The plaintiff could enforce a restriction against the defendant’s use of the property as a commercial garage. Even though the prior owner violated the restriction, the prior owner used the garage for research, not commercial, purposes.); Rich v Isbey, 291 Mich 119; 288 NW 353 (1939) (The plaintiffs could not enforce a height restriction against the defendant’s fence because previously the plaintiff had failed to object to hedges that violated the height restriction.); Polk Manor Co v Manton, 274 Mich 539, 541-543; 265 NW 457 (1936) (The plaintiff could enforce a restriction even though the plaintiff had failed to object to prior violations. Unlike the prior violations that mingled residential and commercial activity, the defendant’s use of the property was to be solely for commercial purposes.).

 The majority recognizes that the plaintiff in Cherry could not contest the new building because “a church is a church.” Nonetheless, the majority claims that my reliance on Cherry is misplaced. Its position is inconsistent. There is no principled reason for finding that “a church is a church,” but a park is not a park.

 Two affidavits offered by plaintiff contain this statement: “I have no doubt that we will experience increased noise from barking dogs and traffic, the presence of strangers and strange dogs, the risk of residents being bitten and dogs jumping the fence, odors from dog droppings, and a deterioration in property values as to any property within sight or sound of Lot 52.”

 Without factual findings by the trial court, we do not know whether dogs were prohibited from the park before the lot was made into a dog park. The fact that someone once saw a “No Dogs” sign proves only that a sign was posted by someone for an unknown period. Without knowing how long the sign was up and whether its command was actually followed, the majority should be wary of concluding that dogs generally were absent from the park.

 Aside from the fact that defendant contests plaintiffs version of the facts, there is an additional problem with the majority accepting plaintiffs rendition of the facts as truth. Because the issue is whether plaintiff is entitled to summary disposition (the Court of Appeals remanded the case for the entry of an order of summary disposition for plaintiff), the facts must be considered in the light most favorable to defendant. The majority should not accept as true contested facts asserted by plaintiff.

 E.g., defendant wrote: “No traffic or noise studies or any other impact analysis have been performed by Appellee or anyone else.” Appellant’s brief, p 26.

 The majority even goes so far as to claim that no court findings are necessary for its decision. As support for this position, it makes the blanket assertion that “[w]hen a city affirmatively encourages the use of a park for a purpose that previously has been prohibited, the record supports the conclusion that a ‘more serious’ violation is shown ....” Ante at 225. This cannot be true. For example, assume that a deed restriction prohibited people from using city park property. Assume, also, that the city allowed touch football but prohibited meditation in the park. Assume it was concerned that an oblivious meditator might be injured by an errantly tossed football. But after a public outcry from those who greatly enjoy meditating in the open air, the city decides to reverse course and prohibit all activity except meditation. This example illustrates the fallacy of the majority’s blanket assertion. It cannot seriously be argued that meditation is a more serious violation of the deed restriction than touch football. Accordingly, it does not follow from the fact that a city affirmatively encourages a use that was previously prohibited that the use constitutes a more serious violation of a deed restriction. Factual findings are necessary.