WILBER v. WISPER & WETSMAN THEATRES.

1. COVENANTS—RESIDENCE SUBDIVISION—ESTOPPEL.
   In suit to enforce negative restrictive covenants relative to use of lots in subdivision for residence purposes only, plaintiffs *held,* not estopped by waiver or acquiescence from insisting on enforcement of the restrictions against theater company seeking to use lots for parking purposes.

2. SAME—RESIDENCE RESTRICTIONS.
   Restrictive covenants confining erection of buildings to a single dwelling house costing not less than $2,500 and necessary out-

buildings on one lot or not less than 40 feet of frontage
and set back at least 20 feet from front line, fairly construed,
prevent use of such lots for business purposes.

3. Same—Residential Use—Parking Lots.
· Fact that some lots about two blocks away in same subdivision
have been used by churchgoers for parking purposes and that
land on opposite side of through street, 100 feet wide and
containing two streetcar tracks in middle, is practically all used
for business purposes *held,* not to have changed conditions
as affecting lots on street which residents have been vigilant
in maintaining for residence purposes and such restrictions
would apply in favor of owner of house on land comprising
east end of two lots on southeast corner of street which house
faces and the through street on which the two lots front ac-
cording to plat so as to permit parking on lots facing the
through street.

4. Same—Residence Subdivision—Parking Lots.
Use of lots restricted to residential use for parking 70 or more
cars both in the daytime and nighttime and on Sunday in close
proximity to a plaintiff's house would be injurious to use of
such plaintiff's property for residential purposes because of
noise and annoyance and was properly enjoined.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted January 8, 1942. (Docket No. 18, Calen-
dar No. 41,739.) Decided March 17, 1942.

Bill by Lou C. Wilber and wife and others against
Wisper & Wetsman Theatres, Tuxedo Theatre Com-
pany, Michigan corporations, and others to re-
strain the parking of automobiles on certain lots.
Case discontinued as to all defendants except Tux-
edo Theatre Company. Decree for plaintiffs. De-
fendant appeals. Affirmed.

*Louis Rosenzweig,* for plaintiffs.

*Charles Rubiner (Wm. Henry Gallagher,* of coun-
sel), for defendant.

Boyles, J. Plaintiffs seek to enjoin the use as a
parking lot of certain premises situated at the

southeast corner of Monterey avenue and Hamilton avenue in the city of Highland Park, Wayne county. The Tuxedo Theatre Company, sole remaining defendant, appeals from a decree enjoining it from maintaining a parking lot thereon or using the vacant lots in question for business purposes. Plaintiff Holtfoth owns a house facing Monterey, occupying a part of lots 236 and 237, and Tuxedo Theatre Company owns the rest of lots 236, 237, 238, and 239, as indicated by the heavy boundary line on the following plat:

MONTEREY AVE.

Certain other property owners on Monterey have joined plaintiff Holtfoth in seeking an injunction. The vacant lots in question lie in Tuxedo Park subdivision, originally owned by Frank T. Lodge about 1896. The north boundary of this subdivision is Monterey avenue, a restricted residential street; the subdivision is bounded on the west by Hamilton avenue, a 100-foot through traffic street, with double streetcar tracks, and extends about three blocks south and a considerable distance to the east. Defendant Tuxedo Theatre Company owns a theatre property in Tuxedo Park subdivision, facing Hamilton avenue, about two and one-half blocks south of Monterey avenue.

The original plattor in conveying the lots in question to his first grantees inserted the following restrictive covenant in each conveyance:

"That he will not erect, keep, operate or maintain either directly or indirectly any saloon or store thereon or any other building except the necessary buildings for residence purposes. Second parties also agree that he will, if he build at all, erect a dwelling house of not less than $2,000 on each of the lots above mentioned which shall at all times be situated not less than 20 feet from the front line of said lots. It is further expressly covenanted by the party of the second part that the foregoing covenants shall run with the above-mentioned premises and shall be chargeable thereon and shall bind his heirs, legal representatives and assigns."

In 1909 the then owners of property on Monterey avenue entered into an agreement restricting the use of their property on Monterey, which was duly recorded in the office of the register of deeds for Wayne county, and which reads as follows:

"We, the undersigned, being owners of all the property on Monterey avenue, between Woodward

avenue and Hamilton boulevard, in the village of Highland Park, Wayne county, Michigan, in order to establish building restrictions covering all of said property, hereby each in consideration of the agreement of the others, mutually agree that the following restrictions shall be placed in all contracts and conveyances of any property made by us or any of us: * * *

"That between Third avenue and Hamilton boulevard no building shall be placed on a lot or less than 40 feet frontage on Monterey avenue, nor within 20 feet of the front line thereof on the south side nor within 25 feet of the front line on the north side of Monterey avenue, and that nothing but a single dwelling house costing not less than $2,500 and the necessary outbuildings shall be built or placed on any of said lots."

This agreement was signed by the then owners of lots 236, 237, and 238 in Tuxedo Park subdivision but not by the then owner of lot 239. However, appellant makes no claim that lot 239 should be considered separately in determining the issue before us. Except for that part of lots 236 and 237, owned by plaintiff Holtfoth, the rest of lots 236, 237, 238, and 239 have remained vacant property. South of lot 236, for a distance of two blocks and within the Tuxedo Park subdivision fronting on Hamilton avenue, the premises are used for residential purposes, except one vacant lot about two blocks south used by a church for parking purposes by churchgoers. The west side of Hamilton is almost entirely occupied by business establishments. Plaintiffs herein, particularly Holtfoth, have vigilantly and consistently acted to enforce the building restrictions and negative restrictive covenants on the lots in question, and plaintiffs are not estopped, by waiver or acquiescence, from insisting on enforcing the restrictions. In 1931 Holtfoth filed a bill of

complaint in chancery and obtained an injunction decreeing that lots 236, 237 and 238 of Tuxedo Park were subject to the restrictions. This decree provides that lots 236, 237, and 238 cannot be used for any except residence purposes and is expressly made to apply to successors in title. No appeal was taken, but defendant Tuxedo Theatre Company was not a party to the proceeding, although it is the grantee in regular chain of title. Tuxedo Theatre Company claims that the use of Hamilton avenue on the west side of that street and the use of property in the south part of the subdivision fronting on Hamilton avenue has caused a change of conditions so as to render the enforcement of these restrictions inequitable. Another decree restrains the owners of the lot on the northeast corner of Monterey and Hamilton from using the same for any kind of business. This lot fronts on Monterey directly north and across the street from lot 236.

Defendant Tuxedo Theatre Company purchased lots 236, 237, 238, and 239 with the intention of using them for parking lot purposes and with full knowledge of the restrictions. While it is true that the restrictive negative covenants, strictly construed, might be held to apply solely to the erection and use of *buildings,* they are obviously part of a general plan to prevent the use of property for business purposes to the detriment of a strictly residential district. These restrictive negative covenants, fairly construed, prevent use of these lots for business purposes. The circuit court so decreed in 1931, and use of the west side of Hamilton avenue and the south part of the subdivision for mercantile establishments has not brought about such a change of condition affecting the rights of property owners on Monterey avenue as to subject them to the use of the lots in question for business purposes. The

limited use of some property at the far south end of Tuxedo Park subdivision does not adversely affect the rights of owners of property on Monterey avenue. Nor does the use of the west side of Hamilton avenue radically change the situation as applied to Monterey. Holtfoth's residential property, fronting on Monterey, extends the entire distance from Monterey south and across the east end of lots 236 and 237. To this extent these lots may be said to front on Monterey avenue. Plaintiffs on Monterey are entitled to the protection of these restrictions for maintaining Monterey avenue as a restricted residential street. There has been no change of condition sufficient to destroy these rights.

Defendant's use of these vacant lots for parking, and the noise and annoyance from parking and starting 70 or more automobiles, both in the daytime and nighttime and on Sunday, in such close proximity to plaintiff Holtfoth's residence, would be injurious to the use of that property for residential purposes.

Decree affirmed, with costs to appellees.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.