Carroll
No. 7462

CARL V. JOSLIN & a.

v.

PINE RIVER DEVELOPMENT CORPORATION
AND
PINE RIVER ASSOCIATION, INCORPORATED

December 30, 1976

*Cooper, Hall & Walker* and *Donald F. Whittum (Mr. Whittum* orally) for the plaintiffs.

*Lecomte, Shea & Dangora* (of Massachusetts) *(Mr. Philip R. Shea* orally) for the defendant Pine River Development Corporation.

*Timothy J. Sullivan,* by brief and orally, for the defendant Pine River Association, Incorporated.

KENISON, C.J.  This is an appeal from an order of the Superior Court *(King, J.)* granting a permanent injunction enjoining the defendants, their successors and all persons acting under their authority from using Lot #26 in the Scribner Park Subdivision at Pine River Pond in Wakefield, New Hampshire, as a common boating or beach area, or a common ingress or egress to and from the beach. The defendants were also enjoined from using Lot #26 in any manner inconsistent with or in contravention of the restrictions in the deed conveying the lots on Pine River Pond. All exceptions were reserved and transferred.

The original developers, the Scribners, laid out forty-eight shore lots including Lot #26 and many more back lots which together constitute the Scribner Park Subdivision. They conveyed some of the shore parcels to the plaintiffs or their predecessors in title. The defendant corporation purchased Lot #26 and a large tract with no frontage. The corporation subdivided the large tract into 161 lots and sold 147 of them to various buyers, some of whom formed the defendant Pine River Association, Inc. The corporation conveyed Lot #26 to the association so that association members would have access to the water and could use the area for swimming, docking their boats, and for other recreational purposes. The land was conveyed because the owners of back lots "ran into trouble" attempting to use other routes to the water. The defendants entered upon Lot #26 and cleared the land for the admitted purpose of making it a docking, beach and recreational area.

All of the deeds to the frontage lots including Lot #26 contain four restrictions limiting the number of cottages to be built on the lots, prohibiting mobile homes, requiring permanent buildings, finished exteriors, modern plumbing facilities and imposing set back requirements. Two other restrictions concern utility easements and drainage rights.

The defendants do not dispute that Lot #26 is subject to the six restrictions imposed upon the rest of the parcels of land in the subdivision. The parties disagree only upon the meaning or effect of those covenants. In determining whether the restrictions concerning the construction of a cottage on Lot #26 prevent the defendants from using the lot for common beach and boating purposes, we confront the general issue of whether restrictions on dwellings or residences limit the use of the land itself apart from any building. 5 R. Powell, Real Property § 673, at 158-62 (1968).

The conclusions reached in cases posing this issue are so dependent upon the particular phraseology of the covenants involved that no sufficient general rules can be stated. Annot., *Restrictive Covenants as Applicable to Land Itself Apart from Buildings*, 155 A.L.R. 528 (1945).

The leading New Hampshire cases are *Fournier v. Kattar*, 108 N.H. 424, 238 A.2d 12 (1968), and *Carroll v. Schechter*, 112 N.H. 216, 293 A.2d 324 (1972). The defendants rely upon *Carroll* in which the land in question was part of a residential subdivision and was subject to protective covenants that regulated the type, height and location of structures and reserved certain rights of way. Not more than one single family residence could be placed on each lot. Neither the deed nor the plan, which was incorporated into the deed, explicitly stated that the land had to be used for residential purposes only. The defendant used part of one lot for a parking area. The master held that this use did not violate the restrictive covenants so long as no parking structures were built. After noting that similar cases reached opposite results under varying circumstances, *see* Annot., 80 A.L.R.2d 1258 (1961), we held that under the particular circumstances, the master's ruling was not erroneous as a matter of law.

According to the defendants, the proper rule of law to be applied in this case is that restrictive covenants are strictly construed to permit the free use of land, that all doubts must be resolved in favor of free use, and that no restrictions may be implied from those expressly stated. The defendants read *Carroll v. Schechter supra* as adopting this rule of law and take the position that, if we affirm the trial court's injunction against using Lot #26 as a common beach and boating area, we will in effect overrule *Carroll*.

*Carroll* did not, as the defendants suggest, articulate any single narrow rule of law regarding the extent to which building restrictions limit the use of the land itself. We simply sustained the trial judge's interpretation and application of the covenants. *See Fournier v. Kattar*, 108 N.H. 424, 238 A.2d 12 (1968). This approach is consistent with the prevailing view that cases involving restrictive covenants present such a wide spectrum of differing circumstances that each case must be decided on its own facts. *Edgewood Park Ass'n. v. Pernar*, 350 Mich. 204, 86 N.W.2d 269 (1957); *Hanley v. Misischi*, 111 R.I. 233, 302 A.2d 79 (1973).

The former prejudice against restrictive covenants which led courts to strictly construe them is yielding to a gradual recognition that they are valuable land use planning devices. 7 G. Thompson,

Real Property § 3158 (J. Grimes ed. Supp. 1976). In *Traficante v. Pope,* 115 N.H. 356, 358, 341 A.2d 782, 784 (1975), we noted that private land use restrictions "have been particularly important in the twentieth century when the value of property often depends in large measure upon maintaining the character of the neighborhood in which it is situated." They are particularly useful in the development of lake communities. Vogel, *Lake Community Developments with Property Owners Associations: Selected Problems for Lot Owners,* 8 Urb. L. Ann. 169, 172 (1974). The modern viewpoint is that the former policy of strictly construing restrictive covenants is no longer operative. 7 G. Thompson, *supra* at § 3166 (J. Grimes ed. Supp. 1976).

Even some of those courts that speak in terms of strict construction have mitigated the harshness of the rule. They give great weight to the intent of the parties and will not defeat the purpose for which the covenant was established. *Stockdale v. Lester,* 158 N.W.2d 20 (Iowa 1968); *Hanley v. Misischi,* 111 R.I. 233, 302 A.2d 79 (1973). All the surrounding circumstances existing at the time of the creation of the covenants are taken into account in determining the intent of the parties. 5 R. Powell, *supra* at § 673; 7 G. Thompson, *supra* at § 3160, at 108-10 (J. Grimes ed. 1962). In determining whether building restrictions constitute use restrictions on the land itself, courts often consider the location and character of the entire tract of land, the purpose of the limitation, whether it was imposed for the sole benefit of the grantor or for the grantee and subsequent purchasers as well and whether the restriction is pursuant to a general building plan for the development of the property. Annot., 155 A.L.R. 528, 529 (1945); *see* Annot., *Construction and Application of Covenant Restricting Use of Property to "Residence" or "Residential Purposes,"* 175 A.L.R. 1191, 1193 (1948). The rule of law proposed by the defendant is too mechanical and rigid and is not the law in this State.

The facts and circumstances of this case are very similar to those in *Edgewood Park Ass'n v. Pernar,* 350 Mich. 204, 86 N.W.2d 269 (1957). In that case all of the shore lots in the subdivision were subject to single family residential building restrictions. The defendants, owners of back lots, wanted to use a frontage lot as a means of access to the lake for swimming and boating. The plaintiffs, who owned shore lots, sought an injunction against the defendants' proposed uses of the land in question. The trial court granted the injunction and the Supreme Court of Michigan affirmed. We cannot say as a matter of law that in the instant case

the trial judge, who heard all the testimony, reviewed all the evidence and made findings of fact, erred in granting the injunction.

The restrictive covenants imposed upon Lot #26, although explicitly referring only to buildings are obviously part of a general plan to prevent the use of property in the Scribner Park Subdivision for any purpose other than residential. *See Wilber v. Wisper & Wetsman Theatres,* 301 Mich. 117, 3 N.W.2d 33 (1942); *Bohm v. Rogoff,* 256 Mich 199, 239 N.W. 320 (1931). Given the surrounding circumstances and the conduct and intent of the parties, the court was not required to find that the use of Lot #26 by potentially hundreds of people at all hours of the day and night for docking their boats, sunbathing, swimming and other recreational activities was within the scheme of residential development of the Pine River Pond area. *See Bouley v. Nashua,* 106 N.H. 74, 205 A.2d 34 (1964).

Our conclusion is not inconsistent with *Fournier v. Kattar,* 108 N.H. 424, 238 A.2d 12 (1968). In that case the court allowed the defendant developer to turn some of the lots retained by him into common beach and boating areas because "[t]he evidence did not require a finding that the property retained by the developer and not subsequently sold for house lots would be restricted to residential use." *Id.* at 428, 238 A.2d at 15. Implicit in the *Fournier* holding is the assumption that, if the developer were bound to use his property for residential purposes only, he could not have built the recreational areas.

We find no error in the trial court's admission of the plaintiffs' opinions as to the value of their property. *Roy v. State,* 104 N.H. 513, 191 A.2d 522 (1963); *see* 7 J. Wigmore, Evidence § 1943, at 53 (3d ed. 1940) and § 1943 (Supp. 1975). The trial court has wide discretion with respect to the admission of opinion evidence. *Brown v. Montgomery Ward & Co.,* 109 N.H. 377, 254 A.2d 840 (1969). The court may have regarded the value of the property as one of the circumstances surrounding the development of Pine River Pond, and the admission of evidence of value was not an abuse of discretion. Finally, the denial of a continuance was not an abuse of discretion. *See LePage v. Theberge,* 97 N.H. 375, 89 A.2d 534 (1952).

*Defendants' exceptions overruled.*

GRIMES and BOIS, JJ., did not sit; the others concurred.