Carroll
No. 90-479

GEORGE J. VOEDISCH *& a.*

v.

TOWN OF WOLFEBORO *& a.*

August 14, 1992

92

*Charles H. Morang*, of Concord, and *Pamela D. Albee*, of Ossipee (*Mr. Morang* and *Ms. Albee* on the brief, and *Mr. Morang* orally), for the plaintiffs.

*Sullivan & Patten P.A.*, of Wolfeboro (*Timothy J. Sullivan* on the brief and orally), for the defendants, Robert B. McNitt and Nancy M. McNitt.

*Nighswander, Martin & Mitchell P.A.*, of Laconia (*Walter L. Mitchell* on the brief and orally), for the defendant, Patricia Rankin.

*Barto and Puffer P.A.*, of Concord, for the defendant, Town of Wolfeboro, filed no brief.

HORTON, J.  The plaintiffs, all owners of neighboring property, appeal the decision of the Superior Court (*O'Neil*, J.) denying an injunction, and finding that although the conveyance of a parcel of land violated the Town of Wolfeboro's (the town) subdivision regulations, the use of the property did not violate either the town's zoning ordinance or the restrictive covenants of the subdivision. On appeal the plaintiffs, in essence, raise three issues. First, noting that the initial transfer of the property was an illegal subdivision, they challenge the trial court's equitable remedy for the subdivision violation. Second, they argue that the exclusive use of the property as a dock to provide boat access to a home on a neighboring island violates the accessory use and access lot provisions of the town's zoning ordinance. Finally, they maintain that such use is inconsistent with the restrictive covenant of the subdivision requiring that the property be used for "residential purposes only." Finding no error, we affirm.

On October 1, 1984, defendant Patricia Rankin sold three lots to defendants Robert and Nancy McNitt as part of an ongoing development scheme of the Springfield Point and Worcester Island areas of Wolfeboro begun by Rankin's father in the 1950's. Two of the parcels are "backlots," having no water frontage, and the third is a waterfront lot, located on a neck connecting the two segments of the development. Only the conveyance and subsequent use of the neck lot is at issue in this appeal.

The McNitts purchased the neck lot primarily to gain access to their home on Walker Island, southeast of the Springfield Point and Worcester Island development. As a result, they have constructed a five-foot by thirty-five-foot dock in the lake off the neck lot, which they use several times a day to reach their home by boat.

The plaintiffs petitioned the superior court to enjoin the McNitts' use of the dock, contending that the original transfer of the lot was an illegal subdivision of the neck land and that the subsequent use of the property violated both the town's zoning ordinance and the development's restrictive covenants. After a view and a nonjury trial, the court found that the original conveyance from Rankin to the McNitts was an illegal subdivision, but that Rankin's offer to transfer the remainder of the neck to the McNitts would remedy the situation and ordered that the transfer be made. The trial court rejected the plaintiffs' argument that the neck lot is an illegal "access lot," used for accessory use only, and also found that the use of the property was not inconsistent with the restrictive covenant limiting the use of the lot to "residential purposes only." This appeal followed.

■■ Whether an injunction is appropriate is within the sound discretion of the trial court. We will not substitute our judgment for that of the trier of fact "if it is supported by the evidence, particularly when the trier of fact has bolstered his conclusions with a view." *N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 779, 533 A.2d 351, 353 (1987).

■■ The plaintiffs first argue that having determined that the sale of a portion of the neck to the McNitts was an illegal subdivision, the trial court should have rescinded the sale and ordered Rankin to obtain subdivision approval. Their argument fails, however, because the plaintiffs conceded at trial that the conveyance of the remainder of the neck to the McNitts would eliminate the illegal subdivision problem. Rankin has agreed to this transfer, and the trial court has ordered that it be made. A court of equity has the jurisdiction to grant remedies necessary to establish, protect, and enforce the es-

sential equitable relief required. 4 S. SYMONS, POMEROY'S EQUITY JURISPRUDENCE § 1339, at 937 (5th ed. 1941). The trial court's order transferring the remainder of the neck to the McNitts, with Rankin's consent, was not an abuse of its equitable discretion.

The plaintiffs next contend that the McNitts' use of the neck lot violates the provisions of the Wolfeboro Zoning Ordinance for two reasons. First, it is an impermissible "accessory use," and second, it is an illegal "access lot." We disagree.

In the Shore Front Residence District, in which the development is located, the permitted uses are:

"a. One (1) single-family dwelling per lot.
b. Accessory uses.
c. One sign per property not to exceed 7½ square feet in area identifying the property."

WOLFEBORO PLANNING AND ZONING ORDINANCE, Art. IX, 2 (as amended through March 13, 1984). The plaintiffs maintain that because the dock is neither a dwelling nor a sign, it must be an "accessory use" to be permitted under the zoning ordinance. Article III of the ordinance, however, defines "accessory building or use" as "[a] building or use other than a dwelling, *located on the same lot as a principal building or use,* and the use of which is incidental thereto." (Emphasis added.) Because there is no other use of the property, the dock on the neck lot does not fit within this definition. Further, although a dock would normally be considered an accessory use, in this case, because there is no other use of the property, the dock becomes the *primary*, and not the accessory, use. *See Perron v. Concord,* 102 N.H. 32, 35–36, 150 A.2d 403, 406 (1959) (describing use that becomes end in itself as losing accessory character and becoming primary use); *Silver v. Zoning Board of Adjustment,* 381 Pa. 41, 44, 112 A.2d 84, 86 (1955) (categorizing sign on otherwise vacant lot as primary use). The ordinance, however, seems to permit only a single-family dwelling as the primary use. Consequently, a literal reading of the ordinance would suggest that the use of the neck lot for a dock was prohibited. Common sense requires that the ordinance be interpreted otherwise. To accept the plaintiffs' argument would mean that any use of undeveloped lots in the Shore Front Residence District, other than for a sign, violates the zoning ordinance. We decline to interpret the ordinance to produce such an illogical result. *See Appeal of Coastal Materials Corp.,* 130 N.H. 98, 105, 534 A.2d 398, 402 (1987); *see also Nashua Y.W.C.A. v. State,* 134 N.H. 681, 684–85, 597 A.2d 535, 537 (1991) (court will reject strictly literal

construction if it contravenes legislature's intended purpose). The ordinance should be interpreted as permitting a primary use on undeveloped lots, if such use is accessory to single family residential use.

■ We also determine that the use does not violate the access lot provisions of the zoning ordinance. Article III of the ordinance defines "access" as a "shore dimension . . . which may serve contiguous backland," and is intended to limit shore front access from backlots; however, no access issue exists in this case. Although the McNitts purchased two backlots when they purchased the peninsula lot, the backlots are not contiguous to the peninsula lot. Thus, the access lot provisions of the zoning ordinance do not apply.

■ The plaintiffs finally argue that the use of the neck lot violates the restrictive covenant of the subdivision that limits the use of the lot to "residential purposes only and the usual and natural uses in connection therewith." They contend that although the "intent of the restriction was not to prevent a single-family's use of a pier on their own lot, such a use cannot stand on its own."

In support of their argument, the plaintiffs cite *Joslin v. Pine River Development Corp.*, 116 N.H. 814, 367 A.2d 599 (1976). Their reliance on *Joslin*, however, is misplaced. In that case, the neighboring landowners likewise argued that the use of the defendants' waterfront lot violated the restrictive covenants of the subdivision limiting the use of property to residential purposes. The facts in *Joslin*, however, are readily distinguishable from the facts in this case. In *Joslin* the defendant corporation had purchased the waterfront lot as access to the lake for 161 backlots. We affirmed the grant of a permanent injunction, noting that the trial court "was not required to find that the use of [the lot] by potentially hundreds of people at all hours of the day and night for docking their boats, sunbathing, swimming and other recreational activities was within the scheme of residential development of the [area]." *Id.* at 818, 367 A.2d at 601–02.

This case presents different concerns. Mr. McNitt testified that he plans to use the neck lot mainly for boat access to his home on Walker Island. Moreover, to allay the plaintiffs' fears of intensification of use of the lot in the future, the trial court ordered that "when the two halves of the [neck] are reunited under common ownership, the resulting parcel shall be utilized for the purpose of one family only, and there shall never be extended from that parcel more than one pier and no unattended vehicles shall be left on the neck." Accordingly, the concerns of the plaintiffs and the court in *Joslin* have been fully addressed here.

Generally, covenants restricting the use of property to "residential purposes" merely limit the use of the property to living purposes as distinguished from business or commercial purposes. *See, e.g., Shermer v. Haynes*, 248 Ark. 255, 260, 451 S.W.2d 445, 448 (1970). The trial court found that the use of the dock is a usual residential use, regardless of whether there is a residence on the property. We find no error in the trial court's determination, and accordingly, we affirm.

*Affirmed.*

BROCK, C.J., and THAYER, J., dissented; the others concurred.

BROCK, C.J., and THAYER, J., dissenting: We disagree with the analysis of the majority leading to its conclusions that an accessory use, unsupported by a primary use, becomes a primary use, and that this primary use can be allowed despite an ordinance that does not expressly permit it. Therefore, we respectfully dissent.